AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Missouri

**FILED**
FEB 1 4 2019
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

In the Matter of the Search of

INFORMATION ASSOCIATED WITH Snapchat username
THAT IS STORED AT PREMISES
CONTROLLED BY SNAPCHAT, INC.

Case No. 4:19 MJ 81 DDN

## APPLICATION FOR A SEARCH WARRANT

I, Joseph R. Somogye, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

SEE ATTACHMENT A

located in the     CENTRAL     District of     CALIFORNIA    , there is now concealed

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21, U.S.C., Section 841 | Conspiracy to Possess with Intent to Distribute Illegal Narcotics |
| 18, U.S.C., Sections 924(c) and 924(j) | Use of Firearm to Commit Violent Felony |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.

☑ Delayed notice of ___ days (give exact ending date if more than 30 days: February 14, 2020 ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*
Joseph R. Somogye, Task Force Officer
Drug Enforcement Administration
*Printed name and title*

Sworn to before me and signed in my presence.

Date: February 14, 2019

*Judge's signature*

City and state: St. Louis, MO

Honorable David D. Noce, U.S. Magistrate Judge
*Printed name and title*

AUSA: Carrie Costantin

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Snapchat profile with username:

that is stored at premises owned, maintained, controlled, or operated by Snapchat, Inc., located at 63 Market Street, Venice, CA 90291.

## **ATTACHMENT B**

### Particular Things to be Seized

I. **Information to be disclosed by Snapchat, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Snapchat, Inc., including all content, messages, records, files, logs, transactional data or information that have been deleted but are still available to Snapchat, Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Snapchat, Inc. is required to disclose the following information to the government for each account listed in Attachment A:

   a. All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, phone numbers, gender, hometown, occupation, and other personal identifiers;
   b. All past and current usernames associated with the account;
   c. The dates and times at which the account and profile were created, and the Internet Protocol ("IP") address at the time of sign-up;
   d. All activity logs including IP logs and other documents showing the IP address, date, and time of each login to the account, as well as any other log file information;
   e. All information regarding the particular device or devices used to login to or access the account, including all device identifier information or cookie information, including all information about the particular device or devices used to access the account and the date and time of those accesses;
   f. All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;
   g. All communications or other messages sent or received by the account between September 14, 2018 and the present;
   h. All user content created, uploaded, or shared by the account, including any comments made by the account on photographs or other content between September 14, 2018 and the present;
   i. All photographs and images in the user gallery for the account between September 14, 2018 and the present;
   j. All location data associated with the account, including geotags between September 14, 2018 and the present;
   k. All data and information that has been deleted by the user between September 14, 2018 and the present;

l.  A list of all of the people that the user follows on Snapchat and all people who are following the user (*i.e.*, the user's "following" list and "followers" list), as well as any friends of the user;

m.  A list of all users that the account has "unfollowed" or blocked;

n.  All privacy and account settings;

o.  All records of Snapchat searches performed by the account, including all past searches saved by the account between September 14, 2018 and the present;

p.  All information about connections between the account and third-party websites and applications; and,

q.  All records pertaining to communications between Snapchat, Inc. and any person regarding the user or the user's Snapchat account, including contacts with support services, and all records of actions taken, including suspensions of the account.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 21, United States Code, Section 841 and Title 18, United States Code, Sections 924(c) and 924(j) involving

from September 14, 2018 to the present, including, for each username identified on Attachment A, information pertaining to the following matters:

(a) Any information or records reflecting associates, accomplices or conspirators;

(b) Any information or records reflecting the sources of supply of controlled substances and individuals involved in the receipt of controlled substances;

(c) Any information or records of rental, lease or ownership of vehicles;

(d) Any information or records relating to the acquisition, use, possession, sale or distribution of controlled substances, firearms and money or currency;

(e) Any evidence that indicates the account holder's state of mind as it relates to the crimes under investigation;

(f) All records and communications between                     ;

(g) All records and communications concerning the                 , preparatory steps to the                 ;

(h) Evidence indicating how and when user's account was accessed to determine the chronological context of account use, account access, and events relating to the crime under investigation;

(i) Evidence indicating the account user's state of mind as it relates to the crimes under investigation;

(j) The identity of the person(s) who created the account, including records that help reveal the whereabouts of such person(s).

(k) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(l) Evidence indicating how and when the Snapchat account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Snapchat account owner;

(m) Evidence indicating the Snapchat account owner's state of mind as it relates to the crime under investigation;

(n) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

3

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Snapchat, Inc., and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Snapchat, Inc.. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Snapchat, Inc., and they were made by Snapchat, Inc. as a regular practice; and

b. such records were generated by Snapchat, Inc.'s electronic process or system that produces an accurate result, to wit:

1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Snapchat, Inc. in a manner to ensure that they are true duplicates of the original records; and

2. the process or system is regularly verified by Snapchat, Inc., and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____
Date                                              Signature

Case: 4:19-mj-00081-DDN   Doc. #:  1   Filed: 02/14/19   Page: 7 of 19 PageID #: 7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

IN RE SEARCH OF: ) **UNDER SEAL**
)
INFORMATION ASSOCIATED WITH )
Snapchat username ) Case No. 4:19 MJ 81 DDN
THAT IS STORED AT PREMISES )
CONTROLLED BY )
SNAPCHAT, INC. )

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Joseph R. Somogye, a Task Force Officer with the Drug Enforcement Administration, being first duly sworn, hereby depose and state as follows:

**Introduction and Agent Background**

1. I make this affidavit in support of an application for a search warrant for information associated with           (the "SUBJECT ACCOUNT") that is stored at premises owned, maintained, controlled, or operated by Snapchat, Inc., ("Snapchat") a social-networking company headquartered in Venice, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A), to require Snapchat to disclose to the government records and other information in its possession, including the contents of communications, pertaining to the subscriber or customer associated with the SUBJECT ACCOUNT.

2. I am a Task Force Officer with the Drug Enforcement Administration and have been since 2010. I have been a deputized Task Force Officer with the Drug Enforcement Administration (DEA) since January 2010 and am currently assigned to an Enforcement Group

of the St. Louis Division Office. Prior to my DEA assignment, I was a sworn police officer with the St. Louis Metropolitan Police Department since 1996.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section 841 and Title 18, United States Code, Sections 924(c) and 924(j) have been committed by

There is also probable cause to search the SUBJECT ACCOUNT for information described in Attachment A for evidence of these crimes and items to be seized listed in Attachment B.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## Probable Cause

6. On              ,                                                was shot and killed at              in the City of St. Louis, Missouri.              was seated in the driver's seat of his              at the time of his death.              was pronounced deceased at the scene. A              was recovered on the back driver-side floorboard. Firearm Examiner David Menendez, DSN 2505, stated a

2

preliminary ballistic examination identified the bullet removed from the decedent and a bullet recovered in the vehicle as being                              .                              was recovered on the ground behind                        ;                                                   was recovered on the back-passenger floorboard.                 ' vehicle evidenced an entrance bullet hole in the                             and an entrance bullet hole                        . A large plastic bag of                                                                         ; measured to weigh

7.   Scene witnesses described                 ' vehicle having followed a                              onto the front parking lot of                              Street. The two vehicles parked alongside each other, and a                     exited from the driver's seat of the                                      ' vehicle. Shots were fired and moments later witnesses observed the                        accelerate from its parked location and flee north on

8.   Detective Nicholas Shelton, DSN 11025, assigned to the St. Louis Metropolitan Police Department's Real Time Crime Center reviewed surveillance footage from the downtown area and observed                                                    meet in the area of                              and then travel together to the                        where the shooting occurred. Detective Shelton was able to discern the                                       (Additional surveillance footage was recovered from the Federal Reserve Bank, which captured the incident, though from a distance.)

9.   At approximately                                                                   was located by Officers Michael Flatley, DSN 11147, and James Wurm, DSN 7908, assigned to the SWAT Unit, at                  , in the City of St. Louis, Missouri. The                        was parked

3

and unoccupied. A surveillance was initiated; however, proved fruitless. The ⬚ was subsequently seized as evidence and conveyed to/secured at the St. Louis Metropolitan Police Department's Laboratory Garage at 1222 Clark Street; apparent blood transfer was located on the center console (analysis pending).

⬚ he aforementioned Missouri License Plates were found to be issued to the ⬚ and registered to ⬚, St. Louis, Missouri. ⬚ is a subsidiary of ⬚ Agency.

10. ⬚ advised the ⬚ had been rented on ⬚, to ⬚ who provided a residential address of ⬚, Missouri and a phone number of ⬚. Members of the St. Louis Metropolitan Police Department responded to the ⬚ address; however, learned ⬚ no longer lived at the location. A call was placed to the phone number; however, the call went unanswered.

11. Witness ⬚ came forward the following night and advised he was with ⬚ at the time the shooting occurred. Witness ⬚ identified ⬚ to be a friend with whom he occasionally associated but stated that he had not seen him for some time. Witness ⬚ advised he was picked up by ⬚ and that the two of them were planning to visit a club in that town. ⬚ that he needed to make a run to downtown St. Louis to ⬚. ⬚ stated he was not involved in ⬚ and was not familiar with downtown St. Louis. He stated that ⬚ made arrangements with an individual through phone calls and texts to meet ⬚. ⬚ and ⬚ a front seat passenger, met ⬚ at one location ⬚ and followed

4

the          to the second location                                      ). The driver from the

          entered

stated he was not involved in the conversation between                              and was

concentrating on his phone when

                              realized the suspect          and fought with the suspect

     , with                                        . When

realized the                              ) he exited the vehicle and ran into the

   12.                              , advised she had last seen/spoken to

                                        stated that

was in possession of his cell phone at that time and always kept the device in his possession.

                    always communicates via his cell phone with her, family, friends,

associates and others who he meets.

   13.    In a later interview with

                              stopped interacting with          for

a while because                              . Within the last few

weeks          began interacting with          again. Additionally,

stated that after          vehicle was returned to her

                                        at that

5

time.

The photographs of

A preservation request was served on Instagram

for the                                  . The

14. Subsequent to the

15. Information was received from                                    , who

informed he supervises

In the past,

16. A state search warrant was sought and granted for records for Victim

6

, Sprint PCS electronically transmitted its response. A review of this Sprint transmission identified the cell phone number provided by                to be in contact with

17. Subsequently, a state search warrant was sought and granted for records for

Sprint PCS electronically transmitted its response. Sprint PCS's response did not include the content of these communications. A review of this Sprint transmission confirmed the communications taking place between

Additionally, these cell phone records reflected

18. In my training and experience, following a individuals will communicate with co-conspirators and associates regarding the           in order to confirm           , organize and create explanations to offer to law enforcement, and These communications often occur over social media, including Snapchat.

19. From my review of publicly available information provided by Snapchat about its service, including Snapchat's "Privacy Policy," I am aware of the following about Snapchat and about the information collected and retained by Snapchat.

7

20. Snapchat is a mobile application made by Snap Inc. and available through the iPhone App Store and Google Play. The application provides a way to share moments with photos, videos, and text. A user takes a photo or video using their camera phone in real-time and then selects which of their friends to send the message to. Unless the sender or recipient opts to save the photo or video, the message will be deleted from their devices (after the content is sent in the case of the sender and after it is opened in the case of the recipient). Users are able to save a photo or video they've taken locally to their device or to Memories, which is Snapchat's cloud-storage service.

21. Stories: A user can add a photo or video Snaps to their "Story." Depending on the user's privacy settings, the photos and videos added to a Story can be viewed by either all Snapchatters or just the user's friends for up to 24 hours. Stories can also be saved in Memories.

22. Memories: Memories is Snapchat's cloud-storage service. Users can save their sent or unsent Snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories. A user can also edit and send Snaps and create Stories from these Memories. Snaps, Stories, and other photos and videos saved in Memories are backed up by us and may remain in Memories until deleted by the user.

23. Chat: A user can also type messages, send photos, videos, audio notes, and video notes to friends within the Snapchat app using the Chat feature. A user sends a Chat message to a friend, and once it is viewed by both parties – and both parties swipe away from the Chat screen – the message will be cleared. Within the Snapchat app itself, a user can opt to save part of the Chat by tapping on the message that they want to keep. The user can clear the message by tapping it again.

8

24. Upon creating a Snapchat account, a Snapchat user must create a unique Snapchat username and an account password. This information is collected and maintained by Snapchat. A Snapchat username is a unique identifier associated with a specific user on Snapchat, and cannot be changed by the user. On the other hand, a Snapchat vanity name is not a unique identifier and can be set and changed by a user or that user's friends to indicate how the user will appear within the app. Unlike a username, a vanity name can contain special characters and symbols beyond hyphen, underscore, or period, as well as spaces, emojis, and capital letters.

25. Snapchat asks users to provide basic identity and contact information upon registration. Basic subscriber information is collected when a user creates a new Snapchat account, alters information at a later date, or otherwise interacts with the Service. Basic subscriber information may include: Snapchat username; Email address; Phone number; Snapchat user vanity name; Snapchat account creation date and IP address; Timestamp and IP address of account logins and logouts.

26. Snapchat retains logs for the last 31 days of Snaps sent and received, for 24 hours of posted Stories, and for any unopened Chats or those saved by a sender or recipient. The logs contain meta-data about the Snaps, Stories, and Chats, but not the content.

27. On or about January 25, 2019, Snapchat was served with a preservation request pursuant to 18 U.S.C. § 2703(f), requiring Snapchat to preserve all information associated with the SUBJECT ACCOUNT.

28. As explained herein, information stored in connection with a Snapchat account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a

Snapchat user's account activity, IP log, stored electronic communications, and other data retained by Snapchat, can indicate who has used or controlled the Snapchat account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, direct messaging logs, shared photos and videos, and captions (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the Snapchat account at a relevant time. Further, Snapchat account activity can show how and when the account was accessed or used. For example, as described herein, Snapchat logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Snapchat access, use, and events relating to the crime under investigation. Additionally, Snapchat builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Snapchat "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Snapchat account owner. Last, Snapchat account activity may provide relevant insight into the Snapchat account owner's state of mind as it relates to the offense under investigation. For example, information on the Snapchat account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

29. Based on the information above, the computers of Snapchat are likely to contain all the material described above with respect to the SUBJECT ACCOUNT, including stored

10

electronic communications and information concerning subscribers and their use of Snapchat, such as account access information, which would include information such as the IP addresses and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times.

### Information To Be Searched And Things To Be Seized

30.  I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular Title 18, United States Code, Sections 2703(a), (b)(1)(A), and (c)(1)(A), by using the warrant to require Snapchat to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

### Conclusion

31.  Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of violations, or attempted violations, of Title 21, United States Code, Section 841 and Title 18, United States Code, Sections 924(c) and 924(j) may be located in the SUBJECT ACCOUNT described in Attachment A.

32.  Based on the foregoing, I request that the Court issue the proposed search warrant.

33.  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. Because the warrant will be served on

11

Snapchat, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

### REQUEST FOR SEALING

34.  I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, specifically they may cause the suspect to destroy evidence, intimidate witnesses or flee the area.

Respectfully submitted,

Joseph R. Somogye
Task Force Officer
Drug Enforcement Administration

SUBSCRIBED and SWORN to before me on __Feb. 14__, 2019

The Honorable Judge David D. Noce
United States Magistrate Judge

12